The **REPUBLICAN PARTY OF WIS- CONSIN, Donald S. Hanaway and Tommy G. Thompson, Plaintiffs,**

**v.**

**ELECTIONS BOARD, an independent agency of the State of Wisconsin; its Chairman, William Mattka; each of its members individually, Gary Aamodt, Stephen A. Beyer, Gregory B. Conway, Esther Kaplan, James Murphy, John Niebler, and Helen Sigmund, and its Executive Secretary, Gerald J. Ferwerda, Defendants,**

**and**

**The League of Women Voters, Intervening Party.**

**Civ. A. 82–C–113.**

United States District Court, E.D. Wisconsin.

May 25, 1984.

Gordon Baldwin, Madison, Wis., for plaintiff.

Daniel Stier, Asst. Atty. Gen., Madison, Wis., for Elections Bd.

Robertamarie Kiley, Madison, Wis., for League of Women Voters.

Before BAUER, Circuit Judge, EVANS, District Judge, and GORDON, Senior District Judge.

## DECISION and ORDER

On February 2, 1982, a Complaint[1] was filed in this court seeking a declaration that Wisconsin's legislative districts as then constituted were unconstitutional. The Complaint also asked that a judicial plan of reapportionment be issued. The case was originally assigned to Judge Terence T. Evans of the United States District Court for the Eastern District of Wisconsin. Judge Evans determined that the case was appropriate for treatment by a three-judge panel pursuant to 28 U.S.C. § 2284. Accordingly, Judge Evans requested in a letter to the Chief Judge of the United States Court of Appeals for the Seventh Circuit that two other judges be appointed to form a panel to consider this case. On February 8, 1982, Chief Judge Walter J. Cummings of the Court of Appeals designated Judge Myron L. Gordon of the United States District Court for the Eastern District of Wisconsin and Judge William J. Bauer of the United States Court of Appeals for the Seventh Circuit to join Judge Evans in forming a three-judge court to consider this case.

On February 22, 1982, we issued an Order declaring that the then-existing Wisconsin apportionment statute was unconstitutional. On June 9, 1982, we issued a decision resolving the case which included a judicially-ordered reapportionment of Wisconsin's legislative districts. On June 17, 1982, an Order amending the plan issued.

Although some of the original parties in this case and a few elected officials in Wisconsin voiced disapproval over the way the legislative districts were formed by the court, no further action was immediately taken by the Legislature and no appeal of our decision was pursued. Our Reapportionment Plan went into effect and the 1982 elections were conducted pursuant to it.

Legislators elected pursuant to the districts established in our Plan—all 99 members of the Wisconsin Assembly and one-half of the members of the Senate—joined those Senators that had been elected to serve four-year terms in 1980 to form the Wisconsin Legislature that convened to do the State's business in January of 1983.

In addition to the elections in November of 1982, five special elections were held following the district lines established by this Court.

On July 1, 1983, the Wisconsin Legislature passed the 1983–85 Biennial Budget Bill which contained a new Reapportionment Plan. That portion of the Budget Bill that included a Reapportionment Plan was vetoed by Governor Anthony S. Earl. Governor Earl stated that he supported the contents of the Reapportionment Plan, but that a plan should not be passed as part of the budget bill. He promised to call a special session of the Legislature to consider reapportionment.

Subsequently, a special session of the Legislature was called. On July 15, 1983, the Legislature passed and Governor Earl signed a Reapportionment Bill which changed the configurations of the districts as drawn by this Court. Five members of the Legislature were elected subsequent to July 15, 1983, using the district lines established in the '83 Act.

On August 18, 1983, a motion for leave to file a Supplemental Complaint was filed by the Republican Party of Wisconsin and two of its members. It challenged the constitutionality of the '83 Reapportion-

---

1. The Complaint was filed by the original plaintiffs in this action, not the plaintiffs referred to in the caption of this opinion. The parties were realigned in our Order of February 10, 1984.

ment Act and requested an injunction prohibiting its use in the elections scheduled later this year. They also seek to reestablish the '82 Court Plan under which present members of the Wisconsin Legislature have been elected as the plan to govern the 1984 elections. The League of Women Voters, a party to this suit when our June 1982 Order was issued, also claims that the '83 Act is unconstitutional.

Unlike the original Complaint which claimed that population changes, as reflected in the 1980 census, made the 1971 reapportionment statute no longer consistent with the one person, one vote principle, the Supplemental Complaint alleges that the boundaries established in the '83 Act are not as contiguous and compact "as practicable" (Supplemental Complaint, First Cause of Action), that the '83 Act denies 173,976 Wisconsin citizens the right to vote for a State Senator every four years (Supplemental Complaint, Second Cause of Action), and that the new statute is not a "good faith effort to assure fair and effective representation" in the Legislature (Supplemental Complaint, Third Cause of Action). The '83 enactment is said to be in violation of the United States Constitution and the Constitution of the State of Wisconsin. In a Decision and Order issued on February 10, 1984, we granted leave to the new plaintiffs to file their supplemental complaint. We did so because our Order of June 9, 1982 stated that our plan would remain in effect until "such time as a *valid* constitutional redistricting plan is enacted into law" (emphasis added).

Briefs have been received and oral arguments were entertained on May 21, 1984. Because we believe that the '83 Act is unconstitutional, we declare it to be such an order that the '82 Court Plan govern future legislative elections again, "until such time as a valid legislative plan is enacted."

We have carefully considered the objections raised to the '83 Legislative Reapportionment Plan. With the exception of one, we find the objections to be without merit. Unfortunately for the health of the plan, its one defect is fatal.

■ First we turn to the contentions we believe have no merit. We find unpersuasive the argument that the '83 Plan creates districts that are "awkward, illogical and at times bizarre." Further, we find wanting the argument that the Plan fails to recognize communities of interest or that it constitutes "egregious" (i.e., flagrant or notorious, as opposed to anticipated) political gerrymandering that would normally be the expected product of a process that is by its very nature "political".

■ Also, we reject all arguments that the '83 Act is invalid because it is not as good as the '82 Plan. Beauty, here at least, is truly in the eyes of the beholder. The viewing of any reapportionment plan as "better" or "worse" than another, particularly by an elected official, often depends on whether he or she has the hide of a pachyderm or a donkey. We need say no more about the arguments that we reject. We turn now to the real bone of contention in this case.

The fatal flaw in the '83 Plan is that it unnecessarily disenfranchises 173,976 citizens of Wisconsin. Under the '83 Plan, 145,026 residents of Wisconsin are in Senate districts that last voted for a State Senator in 1980. In addition, 28,950 residents reside in Senate districts that last voted for a State Senator in 1978. All 173,976 residents, under the '83 Plan, will be ineligible to vote for a State Senator until 1986. This situation, under the peculiar facts of this case, cannot be constitutionally tolerated.

■ Wisconsin requires a staggered-term system for its State Senators. Seventeen Senators are elected in one even numbered year and the other sixteen are elected in the next even numbered year. Wisconsin also requires that its staggered-term system be retained following reapportionment. This apparatus is not challenged by any of the parties before us. Because, however, the staggered-term system is not scrapped for the first election after each reapportionment, every new reapportionment plan creates a situation that results in "holdover" Senators and the temporary dis-

enfranchisement of some residents for a two-year period. After two years have passed, the new plan is completely implemented and no residents are deprived under it of their constitutional right to vote in representative elections.

The temporary disenfranchisement of citizens is constitutionally tolerated under either of two related theories. Due to the complexities of the reapportionment process, a temporary loss of voting rights (the cases speak of a "delay" in the right to vote) is tolerated when it is an "absolute necessity" or when it is "unavoidable". See *In re Reapportionment of the Colorado General Assembly,* 647 P.2d 191 (Colo. 1982) and *Mader v. Crowell,* 498 F.Supp. 226 (M.D.Tenn.1980). A temporary delay in voting, within a staggered-team structure, is an "absolute necessity" and is "unavoidable" when it is caused by the enactment of a new plan that is passed to correct a constitutionally-defective districting system. For this reason, partial temporary disenfranchisement is tolerated when a State, or as occurred here, when a Court orders that a new districting plan be followed. Thus, the temporary disenfranchisement that occurred in Wisconsin under the '82 Court Plan (the result, of course, would have been the same if the Legislature had acted in '82) did not run afoul of the Constitution.

After the 1982 November elections, the '82 Court Plan was fully implemented. No further "delays" in voting rights would have occurred. Because the '82 Plan was constitutional, the passage by the Legislature of its '83 Plan was not "necessary" to correct an existing situation that was unconstitutional. Instead, the '83 Act was passed for other reasons. The disenfranchisement that would occur if the '83 Plan remained in force is not an "absolute necessity" nor is it "unavoidable" as those terms are used in the reapportionment cases.

Had the Legislature enacted a reapportionment plan similar to its '83 effort before the November 1982 elections, we would have no trouble sustaining its validity against a constitutional challenge. Because to sustain it now would adversely affect the voting rights of 173,976 people without just cause, we must declare it to be unconstitutional. We hasten to add that we do not strike the law down out of any pride of authorship in our '82 Plan. We act as we do because we believe it is required under the Constitution. This is not to say that major surgery, like ordering all Senators to stand for election in 1984, would not make the '83 plan constitutionally antiseptic. Such a drastic step, however, should not be taken by a federal court when the elected representatives of Wisconsin, even considering the time constraints imposed upon them, have time to consider that possibility.

Therefore, for the foregoing reasons, we:

1. Declare that the 1983 Wisconsin Legislative Reapportionment Act is unconstitutional. We enjoin its use.

2. Order that the 1982 Court Reapportionment Plan govern further Wisconsin legislative elections until such time as a valid constitutional plan of reapportionment is enacted by the elected officials of Wisconsin.